[Civil No. 2331.   Filed March 1, 1926.]

[243 Pac. 611.]

WILLIAM F. KOCH, Appellant, v. VANCE M. JOHNSON, D. A. ADAMS and JOHN B. HART, as Members of and Constituting the Board of Supervisors of Cochise County, State of Arizona; GEORGE W. P. HUNT, WAYNE HUBBS and C. M. ZANDER, as Members of and Constituting the Board of Directors of State Institutions of the State of Arizona; WAYNE HUBBS, as Treasurer of the State of Arizona; R. H. RAMSEY, as State Auditor of the State of Arizona; and W. C. LEFEBVRE, as State Engineer of and for the State of Arizona, Appellees.

1. HIGHWAYS—HIGHWAY STATUTE HELD NOT INVALID (SESS. LAWS 1923, CHAP. 76).—Session Laws of 1923, chapter 76, being state highway law, is not invalid.

2. HIGHWAYS—HIGHWAY STATUTE DOES NOT CONFINE EXPENDITURE OF SEVENTY-FIVE PER CENT OF FUND TO HIGHWAYS INITIATED PRIOR TO JANUARY 1, 1923 (SESS. LAWS 1923, CHAP. 76, § 10).—Session Laws of 1923, chapter 76, does not confine expenditure of seventy-five per cent of road tax fund apportioned to counties under section 10 to highways initiated prior to January 1, 1923, but permits expenditure for any construction or reconstruction of such public highways, roads and bridges as the board of supervisors and state engineer may agree upon.

3. INJUNCTION—ON COMPLIANCE WITH HIGHWAY STATUTE PRIOR TO FINAL HEARING TEMPORARY RESTRAINING ORDER ISSUED BECAUSE OF SUCH NONCOMPLIANCE PROPERLY DISSOLVED (SESS. LAWS 1923, CHAP. 76).—On compliance with Session Laws of 1923, chapter 76, under which construction of a particular highway was undertaken, prior to final hearing in injunction suit to restrain construction because of such noncompliance a temporary restraining order was properly dissolved.

4. HIGHWAYS—FUND APPORTIONED TO COUNTIES IS PROPERTY OF COUNTY TO WHICH APPORTIONMENT IS MADE (SESS. LAWS 1923, CHAP. 76).—Seventy-five per cent of road tax fund apportioned to counties, under Session Laws of 1923, chapter 76, becomes property of county to which such fund is apportioned and may be expended under section 6, relative to contracts between political subdivisions and board of directors of state institutions.

5. HIGHWAYS—BOARDS OF SUPERVISORS AND BOARD OF DIRECTORS OF STATE INSTITUTIONS MAY ENTER INTO CONTRACTS DIRECT FOR HIGHWAY CONSTRUCTION (SESS. LAWS 1923, CHAP. 76).—Under Session Laws of 1923, chapter 76, board of supervisors of respective counties and board of directors of state institutions may enter into contracts direct for performance of highway construction.

6. HIGHWAYS—BOARD OF SUPERVISORS AND STATE ENGINEER, CONTRACTING WITH BOARD OF DIRECTORS OF STATE INSTITUTIONS FOR CONSTRUCTION OF HIGHWAY, HAVE DUTY AND RESPONSIBILITY TO SEE THAT WORK IS PROPERLY DONE (SESS. LAWS 1923, CHAP. 76).— Under Session Laws of 1923, chapter 76, board of supervisors and state engineer, contracting with board of directors of state institutions for construction of highway, have duty and responsibility to see that the work is done within the estimate and according to plans and specifications.

7. HIGHWAYS—CONTRACT OF COUNTY WITH STATE BOARD OF DIRECTORS OF STATE INSTITUTIONS, FOR CONSTRUCTION OF HIGHWAY, SIGNED BY, AND EXECUTED IN NAME OF, SUPERVISORS, WAS PROPERLY EXECUTED (SESS. LAWS 1923, CHAP. 76, § 6).—Contract of county with state board of directors of state institutions for construction of highway, signed by, and executed in name of, supervisors in official capacity, was properly executed under Session Laws of 1923, chapter 76, section 6.

See (1) 29 C. J., p. 741, n. 31 New.  (2) 29 C. J., p. 741, n. 31 New.  (3) 32 C. J., p. 405, n. 61.  (4) 29 C. J., p. 741, n. 31 New. (5, 6) 29 C. J., p. 608, n. 99 New, p. 611, n. 35 New.  (7) 29 C. J., p. 607, n. 82.

APPEAL from a judgment of the Superior Court of the County of Cochise. Richard Lamson, Judge. Affirmed.

Mr. Fred Sutter, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. A. R. Lynch, Mr. Earl Anderson, and Mr. Ernest W. McFarland, Assistant Attorneys General, and Mr. John F. Ross, County Attorney, for Appellees.

FAIRES, Superior Judge.—This is an appeal from the superior court of Cochise county which involves the construction of chapter 76 of the Session Laws of the state of Arizona of 1923.

From the agreed statement of the case, it appears that during the month of April, 1924, the board of directors of state institutions, pursuant to an understanding with the board of supervisors of Cochise county and the approval of the state engineer, commenced the construction of a definite section of what is known as the north and south highway located in Cochise county; cost of which work was to be paid out of the seventy-five per cent fund provided in that act.

The appellant, plaintiff below, sought to enjoin the prosecution of such work, and in his complaint set forth two causes of action. In one count he attacked the constitutionality of the above-mentioned act. In the second count he contended that the particular construction work did not fall within the purview of said act, and that, if it did fall within the act, the conditions and provisions of the same had not been observed.

The appellees, defendants below, interposed demurrers to the two causes of action. The demurrer to plaintiff's cause of action, attacking the constitution-

ality of the act, was sustained, while the demurrer to the other cause of action was overruled and a temporary restraining order issued. Thereafter, and pending the final hearing, the appellees caused the particular highway to be designated as a state highway, and caused plans, specifications, and estimates to be prepared and filed as provided by the act, and a written agreement in duplicate was entered into between the board of directors of state institutions and the board of supervisors of Cochise county and the state engineer, pertaining to the construction of said road.

The defendants filed an amended answer, setting forth these facts, and, upon final hearing of the cause, the trial court rendered final judgment, dissolving the temporary restraining order, and denying plaintiff's prayer that the injunction be made permanent. A motion for a new trial having been overruled, plaintiff perfected this appeal.

The constitutionality of chapter 76 was expressly raised before this court in *Black & White Taxicab Co.* v. *Standard Oil Co. et al.*, 25 Ariz. 381, 218 Pac. 139. The court in that case, after careful consideration, upheld the validity of the law. We have carefully reviewed points raised by appellant in this appeal, but find no reason to depart from the court's former opinion sustaining the constitutionality of the act.

Appellant urges several assignments of error on the part of the trial court in refusing to enter a permanent restraining order based upon his second cause of action. He contends that, since the proposed highway was not commenced, authorized nor initiated prior to January 1, 1923, it could not fall within the provisions of the act and Cochise county's seventy-five per cent fund could not be expended on the project; in other words, that the funds provided

under chapter 76 could be expended only upon projects commenced, authorized, or initiated prior to January 1, 1923.

This court stated, in the case of *Black & White Taxicab Co.* v. *Standard Oil Co. et al., supra:*

"We think the title as well as the body of the act has to do generally with the public highways of the state; in other words, the subject expressed in the title and treated in the act as 'highways'—their construction, maintenance, the raising of revenues therefor, and the manner of their expenditure or distribution. Closely allied to that general subject, and in consonance therewith, is the providing for the payment of any highway construction already completed or in the course of completion and the repayment of borrowed money by one of the political units to others, and the ratifying and approving of contracts for future construction and providing funds therefor."

We are of the opinion that, from the reading of the law, its fundamental purpose is to provide funds and revenues and to afford methods for the construction of a comprehensive highway system, and, in construing the several provisions of the act, its general purpose should be kept in mind. Section 10 of the act provides:

"Seventy-five per cent (75%) of such 'State Road Tax Fund, herein provided for, shall be apportioned to the several counties in the amount to each county of seventy-five per cent of the taxes collected under this act, by said county, and such amount shall be subject to be paid out for the construction, reconstruction, repair, improvement and maintenance of public highways, roads and bridges in the manner as in this act provided for the work in this act provided for within such county upon the authority and under the direction of the county board of supervisors of such county and the state engineer who are hereby charged with such responsibility."

It is apparent from this section that it is within the contemplation of the legislature that any county's portion of said seventy-five per cent fund could be expended upon any highway or bridge construction or reconstruction within such county agreeable to the board of supervisors of said county and the office of the state engineer. The language of the statute does not confine the expenditure of the seventy-five per cent fund to highways initiated prior to January 1, 1923, but permits expenditure for any construction or reconstruction of public highways, roads and bridges within such county.

Appellant's position would prohibit any new road work being constructed in any county out of the seventy-five per cent fund, even though the entire fund were not necessary to maintain the roads already in existence. In view of the language of the act, we cannot subscribe to such construction.

In light of the purpose of the statute, we are of the opinion that the law contemplates the expenditure of said seventy-five per cent fund upon such construction or reconstruction of roads within the county as the board of supervisors and the state engineer may agree upon. That this was the intent of the legislature is further evidenced by section 6 of the act, which provides:

"Said board is hereby authorized to enter into agreements with any political subdivision of this state, by and through the proper governing body thereof, for the use by the state of Arizona, of bond or other moneys of such political subdivision, for the construction and completion of the road projects, enumerated in section 5, of this act, or for other projects as may be approved by such board."

It is seen from this that the board of directors of state institutions are authorized to enter into construction contracts with political subdivisions of the

state for the construction of highways other than those initiated or commenced prior to January 1, 1923, as provided in section 5.

The language of the statute authorizing the board to enter into agreements with any political subdivision in this state for the construction of road projects enumerated in section 5 of the act, or for other projects as may be provided by such board, necessarily contemplates that, so long as funds are available, the construction of other highway projects could be undertaken. Accordingly, since the board of supervisors of Cochise county and the state engineer were in accord with the construction program, and funds were available, the board of supervisors and the state engineer could make such expenditure upon any road project within Cochise county, whether the same be authorized, commenced, or initiated subsequent or prior to January 1, 1923.

Appellant next contends that the provisions of the act had not been complied with, in that the highway had not been properly designated, nor had plans, specifications or estimates been prepared and filed as required by the act, nor had a written agreement been entered into between the board of supervisors and the board of directors of state institutions as required by the law prior to the commencement of the construction of the road project. That these objections were well taken by appellant was recognized by the trial court, when it entered its temporary restraining order. However, subsequent to the entry of the order, and prior to final hearing, the several provisions of the statute were complied with, and at the final hearing the trial court dissolved its temporary restraining order. In view of the compliance by appellees with the statute prior to final hearing, we are of the opinion that the trial court's ruling in

dissolving the temporary restraining order was proper.

Appellant contends that the board of supervisors and the state engineer could not legally enter into an agreement with the board of directors of state institutions for the construction of the particular highway, since by so doing they waived the right and responsibility imposed upon them by the law. Appellant argues that the seventy-five per cent fund does not belong to the county, and therefore section 6 does not cover the expenditure; that the board of directors of state institutions has no authority to expend this money; that the law imposes the duty upon the board of supervisors and the state engineer to supervise the construction of the roads and the expenditures of money, and by the alleged contract entered into with the board of directors of state institutions they illegally waived this responsibility.

In the case of *Black & White Taxicab Co.* v. *Standard Oil Co. et al.*, *supra*, we stated:

"Section 6 authorizes the board of supervisors to enter into contracts with the board of state institutions to expend upon projects within their counties the 75 per cent fund hereinafter mentioned and to pay in to the state treasury, out of said fund to be credited to a segregated account within the general fund of the state in favor of such aid projects, the sum agreed to be contributed."

Under section 10 hereinbefore quoted, it is expressly provided that the seventy-five per cent fund shall be apportioned to the several counties in accordance with their proper interest. While the fund is collected by state agencies acting through county agencies, and deposited with the treasurer of the state, yet, when received by the state treasurer, it is apportioned as required by the law, and the state agencies and authorities have no further control over

it, except in so far as the state engineer concurs with the board of supervisors of the respective counties in authorizing and directing its distribution and expenditure. The fact that it may be carried upon the books and designated the seventy-five per cent apportionment account within the general fund of the state, and that the state engineer is in part charged with the responsibility of its expenditure, does not defeat the practical effect that it is county funds and can be expended only upon the authorization of the county board of supervisors. The bookkeeping and auditing are merely methods of accounting and not evidence of ownership. Accordingly, we are of the opinion that, when the seventy-five per cent fund of the state road tax fund is apportioned to the respective counties, the same becomes to all intents and purposes the properties of the counties in the amounts specified by the law, and subject to the control and disbursement of the board of supervisors and the state engineer.

Having decided that the seventy-five per cent apportionment fund belongs to the respective counties, we are of the further opinion that such funds may be expended under section 6, which authorizes the board of directors of state institutions to enter into contracts with political subdivisions of the state for the expenditure of bond or other moneys of such political subdivision for the construction of highways within the corporate boundaries of such political subdivision. We believe our construction to be in harmony with the purposes of the act, considering the facilities for road construction available to the state highway department acting under the board of directors of state institutions.

The law does not require that the board of supervisors and the state engineer actually construct the highway, but merely that the funds available from

the seventy-five per cent fund shall be paid out for the construction of public highways "upon the authority and under the direction of the county board of supervisors of such county and the state engineer, who are hereby charged with such responsibility."

Construing sections 6 and 10, a method in addition to those already prescribed by law is provided by which a county can construct highways. Under these sections we are of the opinion that it is within the rights of the board of supervisors of the respective counties and the board of directors of state institutions to enter into contracts direct for the performance of such work. It is the duty of the supervisors and state engineer to see that proper designations are made and specifications and plans are prepared and filed according to which the road must be built, and the estimated cost for such work, and that such work is done in accordance therewith. Under the provisions of the act, the actual performance of the work may be contracted with the board of directors of state institutions. The duty and responsibility still remain upon the board of supervisors and the state engineer to see that the work is done within the estimate and according to plans and specifications for such particular project. That the board still retains its responsibility is evidenced by the provisions of the contract, which require all claims and demands for payment on account of labor performed and materials furnished to be paid only upon vouchers of the state engineer approved by the board of supervisors.

We are of the opinion that under this act the board of supervisors and the state engineer, being in accord, were acting within their authority when they entered into the agreement with the board of directors of state institutions for the construction of

the particular highway in accordance with estimated costs, and pursuant to plans and specifications agreed upon prior to the execution of the agreement, and that the work was still being carried on under the authority and direction of the county supervisors and state engineer, who are charged with the responsibility of seeing that the work was performed in accordance with such contract.

Appellant raises the further point that the contract was not executed in the name of Cochise county, but in the name of the board of supervisors of Cochise county, and therefore contrary to section 6, chapter 76, of the act. Section 6 provides:

"Said board is hereby authorized to enter into agreements with any political subdivision of this state, by and through the proper governing body thereof," etc.

It must be considered that the board of supervisors is the governing body of Cochise county for the purposes of this act, and, as stated in the case of *Gannon* v. *Hohusen,* 14 Ariz. 523–527, 132 Pac. 566, 567:

"The board of supervisors may make certain contracts for their county, but in such case the county is the contracting party, and the board is the instrumentality through which the county must act."

It appears that the contract was entered into by the board of supervisors of Cochise county and signed by members of such board of supervisors in their official capacity concerning the construction of highways in Cochise county, which is a matter solely for the interest and purpose of that county. Since the statute authorizes the execution of such contracts with any political subdivision by and through the proper governing body thereof, we are of the opinion

that the contract before the court was properly entered into under the provisions of chapter 76.

The judgment of the lower court is affirmed.

McALISTER, C. J., and ROSS, J., concur.

NOTE.—Judge LOCKWOOD having announced his disqualification, the Honorable C. C. FAIRES, Judge of the Superior Court of Gila County, was called in to sit in his stead.